15608

KELLEY v. CAPITAL MOTORS, INC.

(28 S. E. (2d), 836)

March, 1943.

*Messrs. Tompkins & Tompkins* of Columbia, S. C., Counsel for Appellant,

*Mr. C. T. Graydon* and *Mr. F. Ehrlich Thompson,* both of Columbia, S. C., and *Mr. J. Frank Eatman* of Kingstree, S. C., Counsel for Respondent,

Counsel for Appellant, in Reply,

January 10, 1944.

The Majority Opinion of the Court was delivered by CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, with MR. ASSOCIATE JUSTICE STUKES filing a Dissenting Opinion. The Opinion of the Court follows:

This cause involves the degree of care required of a bailee for mutual benefit.

The action was commenced by the service of a summons and complaint on or about the 27th day of April, 1942, asking damages against the appellant by reason of its failure to deliver to respondent a certain automobile, the property of respondent, which had been left with appellant at its garage for repairs.

The record shows that the failure to deliver the automobile to respondent was due to the fact that appellant's garage and respondent's automobile had been destroyed by fire.

The facts and circumstances surrounding the fire were as follows:

Appellant rented the lower floor of a two-story brick building on the corner of Gervais and Marion Streets in the City of Columbia, and there operated its business of automobile sales and repairs garage. Another party rented the second floor in the building and there operated a bowling alley. Appellant was in no way connected in business with the occupant of the second story. On February 2, 1942, respondent's automobile was delivered to appellant for the purpose of having repairs done upon it. At 1:58 A. M., on the morning of February 13, 1942, the fire department of the City of Columbia received an alarm of fire and proceeded to this building; arriving there within two minutes after receiving the alarm. It was found that the premises on the second floor, occupied by the bowling alley, were on fire. The firemen broke into a door leading into the premises of appellant on the first floor. They found no smoke and no fire on the first floor. They also broke into a door which allowed them to go up on the second floor. There they found a "whole entire" alley just a lot of flames." Three firemen went up together. When they opened the door, the fire flew out on them, and they were forced to turn loose and almost fall down the stairs to get out of the way of the fire.

Fifteen minutes after the fire department arrived at the building there was no heat downstairs to bother them at all, and no smoke.

In spite of the efforts of the firemen, the fire spread. While some of the automobiles within the premises of appellant were rescued, the removal of others was halted by the chief of the fire department for fear of the possibility of injury from falling roof and flooring.

Dr. Kelley's automobile was destroyed, as well as four belonging to appellant, and also two belonging to other parties.

The record shows that appellant did not employ a night watchman.

Respondent states in his brief that there were no fire extinguishers and no sprinkler system on the premises occupied by appellant. The record appears to be silent as to fire extinguishers or sprinkler system. Nevertheless, for the purpose of this opinion, we may assume that there were none such present.

The jury rendered a verdict in behalf of respondent in the sum of Fifteen Hundred ($1,500.00) Dollars. From judgment entered thereon this appeal has been brought.

At the close of all of the testimony appellant made a motion for a directed verdict in its behalf on the following grounds:

1. That no reasonable inference can be drawn from the testimony except that the defendant was guilty of no negligence having a causal connection with the destruction of plaintiff's property.

2. That no reasonable inference can be drawn from the testimony except that the defendant used in the care of the plaintiff's property at least that degree of care which is exercised by a prudent man in the management of his own affairs.

In overruling this motion the presiding judge made the following statement:

"I think it is a question of fact for the jury. The matter of what care should have been taken, under the circumstances, is not controlled by the pleadings, because no specific lack of care is alleged or denied, and it is conceivable that the jury might conclude something about the matter of care that neither counsel on either side, nor the Court, would have in mind. We don't have a case where some specific negligence is charged, in which we could say, under the circumstances, there is no testimony on these charges to submit to the jury. Therefore I think it is a case that would have to be submitted to the jury under the law as you gentlemen have presented it."

We do not find ourselves in complete concurrence with the statement of the presiding Judge. In the case of *Albergotti v. Produce Company*, 202 S. C., 357, 25 S. E. (2d), 156, 158, March 30, 1943, this court stated the rule to be as follows:

"From a study of the decided cases in this State, it would appear that our Court has recognized that certain presumptions may arise in bailment cases, especially as to warehousemen, which overlap and shadow the oft-repeated statement found in negligence cases, that the doctrine of *res ipsa loquitur* does not prevail in this State. In other words, in warehouse bailments, when the bailor shows that the bailee has not returned the property, the subject of the bailment, or that the property has been lost by theft or fire, or that it has been returned in a damaged condition, such bailor has made out a prima facie case, and the duty is then shifted to the bailee to show that he has used ordinary care in the storage and safe keeping of the property. From these facts, coupled with any testimony on the subject the bailor may introduce, it is for the jury to say whether the bailee has been negligent, that is, failed to use ordinary care. *Of course if upon all the testimony in the case the only reasonable inference that can be drawn therefrom is that the bailee used due care, it would then be the duty of the trial Judge to direct a verdict in the bailee's favor."* (Italics added.)

In a consideration of the law applicable to the issues in this cause it must ever be kept in mind that a bailee for mutual benefit is not an insurer. If he were an insurer the mere proof of loss or damage would make him liable. This lawsuit would be entirely unnecessary.

But this is a *negligence* case. And in order to warrant a verdict and judgment for the bailor two things must appear from the record.

First: The record must warrant a reasonable inference of negligence upon the part of the bailee.

Second: The record must warrant a reasonable finding that such negligence upon the part of the bailee was a proximate, direct and immediate cause of the loss or damage.

And in cases of this nature it is the duty of the bailee, in this jurisdiction, to disclose the facts and circumstances surrounding the loss and damage, and to show that he exercised the degree of care imposed upon him by the law in order to avoid such loss or damage to the bailed property. On this issue the bailee has the burden of proof.

The degree of care required of a bailee for mutual benefit is defined as ordinary care, or due care, or the degree of care which would be exercised by a person of ordinary care in the protection of his own property.

In his Commentaries on American Law, Chancellor Kent, in his consideration of the duties and liabilities of a bailee for mutual benefit, states:

"As this contract is of mutual benefit, the bailee is not answerable for slight neglect, nor for a loss by inevitable accident or irresistible force; he is only answerable for ordinary neglect."

With these principles in mind let us now consider the facts of this case as disclosed by the record, in relation to the two elements of a bailor's right to recovery from a bailee for mutual benefit. These elements are, as above stated, 1st; —negligence, or absence of ordinary care, on the part of the bailee, and 2nd;—that such negligence, if any there was, contributed to the loss or damage as a proximate, direct and immediate cause thereof, without which negligence on the part of the bailee the loss or damage would not have occurred.

Respondent's automobile was lost by reason of a fire which commenced on premises over which appellant had no control, and which, in spite of the efforts of the fire department of the City of Columbia, spread to appellant's salesroom and repair garage and destroyed not only respondent's

automobile but also several automobile belonging to appellant.

Does the record warrant a reasonable inference of negligence on the part of the appellant? Respondent insists that the failure to provide a night watchman, a sprinkler system, or fire extinguishers warrant such a finding.

Were this bailee held by law to the *highest degree of care* he would be required to exercise and employ every precaution available for the protection of the bailed property. The highest degree of care would undoubtedly include precautions such as a night watchman, a sprinkler system and fire-extinguishing apparatus. A bailee for mutual benefit, however, is not held to the highest degree of care. The law requires him to exercise what is called "ordinary care"; that degree of care which a man of ordinary prudence and care would exercise in the protection of his own property.

While these precautions are admirable, and while one who employs them is to be commended for his care and caution, and while the circumstances surrounding some bailments for mutual benefit might well require their exercise and employment by a bailee, we hesitate to hold that every person who operates an automobile salesroom and repair garage must either employ a night watchman or else be held guilty of negligence;—or must either install a sprinkler system or fire-extinguishing apparatus or else be held to be negligent;—or must either have all three—night watchman, sprinkler system and fire-extinguishing apparatus— or else be held to be negligent.

It is our opinion that the record in this case does not warrant a reasonable inference of negligence on the part of appellant.

On the issue of proximate cause we are of the opinion that the only reasonable inference warranted by the record is that the proximate, direct and immediate cause of the loss of respondent's automobile was a fire which broke out and commenced on premises over which appellant had no control,

and which, in spite of the efforts of the fire department of the City of Columbia, spread to appellant's salesroom and repair garage.

The cause of respondent's loss, in our opinion, comes within the inevitable accident or irresistible force mentioned by Chancellor Kent, and for which the bailee is not answerable.

It necessarily follows that the trial judge was in error in refusing appellant's motion for a directed verdict. The judgment must be reversed with directions to enter judgment for appellant.

MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE and CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, concur.

MR. ASSOCIATE JUSTICE STUKES (dissenting):

I do not agree with the disposition of this appeal contained in the judgment of Mr. Acting Associate Justice Grimball, for whose opinion I have a very high respect. I do not think it can be said with full accuracy that this is a negligence case, as he does; rather, I think, it is a typical case of a bailment for mutual benefit and that the trial judge was correct in his quoted statement and that he properly declined to direct a verdict.

Earlier authorities had established the rule which was so well stated in *Fleischman, Morris & Co. v. Southern Railway, 76 S. C., 237, 56 S. E., 974, 977, 9 L. R. A. (N. S.)*, 519, by the eminent Justice Woods, afterward a member of the Federal Circuit Court of Appeals, that it soon became a leading case upon the subject and is still so unless now repudiated. Because of its force and clarity, and the express recognition that this State has and enforces a minority rule, the language of Mr. Justice Woods in conclusion of the opinion is here set forth:

"The rule in this state, as indicated by the cases above referred to, is that the bailor must prove delivery to the bailee and his refusal to return as required by the contract of bail-

ment. The burden is then on the bailor to prove that he has not converted the property, and this he may do by showing its loss and the manner of its loss; but by the manner of loss is meant, not only the isolated fact of destruction by fire, or loss by theft or otherwise, but the circumstances connected with the origin of the fire or other cause of loss or injury as far as known to the bailee, *and the precautions taken to prevent the loss or injury.* From these facts, coupled with any testimony on the subject the bailor may introduce, it is for the jury to say whether the bailee was negligent. This rule is entirely reasonable. The facts surrounding the loss, particularly the precautions taken against it, are usually known to the bailee or ascertainable by him. On the other hand, the owner of the property cannot be supposed to know the details of a warehouseman's business, for he is often hundreds of miles away. With the great modern development of the warehouse business, we venture to think the injustice of the rule which exempts a warehouseman from responsibility to the owner on the bald proof of loss or injury to the goods by fire, by theft, or otherwise, will become more and more apparent. In most cases, to require the owner to assume the burden of showing that the fire or theft was due to the lack of ordinary care is to impose an impossible task and place him more than ever at the mercy of the warehouseman. *We are satisfied, therefore, to adhere to the somewhat exceptional rule laid down in this state, notwithstanding the great number of opposing authorities in other jurisdictions."* (Emphasis added.)

The case has been followed without break and was recently referred to at length and reaffirmed by this court in the case of *Gilland v. Peter's Dry Cleaning Co.,* 195 S. C., 417, 11 S. E. (2d), 857, opinion by Mr. Acting Associate Justice Lide. Search of West's Digest has failed to disclose any case reported from the appellate courts of this State since the year 1851 (and that involved the accidental shooting of a slave on a Pee Dee River steamer) in which verdict was

directed for a bailee where he had failed to re-deliver the property in accord with his contract. Surely that is significant.

There may be a conceivable case in which the direction of verdict for such a defendant would be proper, where for instance he showed in the testimony the highest degree of care, referred to by Mr. Justice Grimball, and had employed all reasonably available precautions against the hazard which destroyed the property. But the point is, I think, that when the court undertakes to determine what is reasonable care and what is the highest degree thereof, the term used here, or speculates upon intervening degrees of care or negligence, it is palpably invading the province of the jury which alone, under our Constitution and laws, may find such facts, under proper instructions by the court.

And it is well it is that way for the twelve members of the jury, drawn from all walks of life, are more apt to find and apply by their verdicts just and proper standards of conduct on the part of litigants than are cloistered courts. Certainly they are more familiar with the ordinary business and other transactions of everyday life than are judges and are thereby better able to determine the course of conduct of the average, reasonably prudent man,—the familiar yardstick.

I do not think that the authorities cited by Mr. Justice Grimball warrant departure from the long and well-established rule of this court upon the subject. The text quoted from Kent's Commentaries was written without apparent regard or even knowledge of the rule of our decisions, and certainly the recent case of *Albergotti v. Produce Co.*, 202 S. C., 357, 25 S. E. (2d), 156, is not authority against the respondent here. More or less thrown in the opinion, as has been similarly done above, was the statement that if upon all of the testimony the only reasonable inference would be one of due care on the part of the bailee, verdict might be directed. But the facts and result of that case are authority

here to the contrary. There pecan meats were placed in a cold storage plant and delivered damaged. Naturally plaintiffs were at a disadvantage in undertaking to prove negligence, which incidentally they did not have to do, and all that they offered, referred to in the opinion of the court, was that when they visited the storage room they found it damp, the fan was frosted and the (objectionable?) odor of beer was noticeable. On the other hand, defendant's testimony was to the effect that it was a modern refrigeration plant with automatic control of temperature and humidity, serviced by an expert and never out of order, etc. Surely that was a complete negativing of negligence, insofar as the record shows, on the part of the bailee, but nevertheless the course of the court in submitting the question of liability to the jury was approved and their verdict for the plaintiff was allowed to stand, the court expressly recognizing the unusual rule relating to liability in bailment cases in this State and citing the leading case of Fleischman, referring to the authorship of the opinion by Mr. Justice Woods, and rejecting its recent application in *Gilland v. Peter's Dry Cleaning Co., supra.*

I do not now think that the unnecessary statement in the opinion in the *Albergotti case* to the effect that verdict may be directed "upon all the testimony in the case" is entirely accurate for our cases in number hold that the bailor, failing to recover his property in accord with his contract, may prove the latter and rest and the burden is upon the bailee to show to the satisfaction of the jury that he used due care, so a verdict for the bailor may be properly based upon the lack of evidence, as it was in the *Gilland-Peter's Dry Cleaning Co. case* where the bailee-defendant offered no evidence at all. So Justice Grimball's implied criticism of respondent's argument that there were no fire extinguishers and no sprinkler system on the premises, which facts he does not find in the record, should instead, I think, be a criticism of appellant's failure of proof. The verdict of the jury might

reasonably have been founded upon the failure of the bailee to offer testimony that these or other precautions were taken, or upon the absence of a watchman, or upon appellant's storage of the valuable bailed property in the most inaccessible part of the building (which is in the record) so it could not be removed from the burning building although other automobiles stored at the front of the building were removed to safety.

This State is not alone in the foregoing well-established rule as will be seen by reference to the encyclopedias and annotations. 6 Am. Jur., Bailments; 8 C. J. S., Bailments; 9 A. L. R., 559, which is an annotation of a case from the Supreme Court of North Carolina, *Beck v. Wilkins-Ricks Co.*, 179 N. C., 231, 102 S. E., 313, in which the leading opinion was written by the highly respected former Chief Justice Clark in 1920; 15 A. L. R., 681; 42 A. L. R., 135; 65 A. L. R., 431; and possibly others which have been consulted but not noted. Beginning on page 569 of 9 A. L. R., the South Carolina rule, said to be opposed to the weight of authority, is separately treated and our decisions establishing it fully analyzed.

The discussion in American Jurisprudence is enlightening and seems to support our rule as the modern one. It is said in Volume 6 at page 475: "Thus, a motion for judgment as of nonsuit at the close of plaintiff's evidence is properly refused where the proof introduced has made a prima facie case for the bailor by showing facts from which a jury could reasonably find the existence of a contract of bailment, a delivery of the property to the bailee pursuant thereto, and either the bailee's failure to return it on demand or a return in damaged condition." This was our *Gilland-Peter's Dry Cleaning Co. case, supra,* in which this text was cited with approval. And on page 473 of the same volume it is said: "But such a case (referring to the rare cases in which verdict may be directed for the bailee) the question of negligence is one of law for the court only when the facts are

not in any event or in any view of the case susceptible to the inference of negligence sought to be deduced therefrom. It cannot be said as a matter of law that there is no evidence to support an inference, if intelligent and fair-minded men might reasonably differ as to the conclusions to be drawn from the evidence. In such a case the question is for the jury." And further on the same page and the next: "While the Court may state the law as to what will constitute a prima facie case for the bailor in an action against the bailee for loss of, or injury to, the bailed property, it should be left to the jury, where the ultimate facts establishing such a case are not conceded or undisputed or the sole possible inference from the evidence, to determine from the evidence whether a prima facie case has been overcome by the defendant's evidence, and whether, from all the facts and circumstances, the defendant is liable." To similar effect is the conclusion at page 339, as follows: "From the foregoing it is evident that, generally speaking, whether or not ordinary care is exercised is a question of fact, or a mixed question of law and fact, for the determination of the jury under proper instructions."

It is worthy of note that the writer of the foregoing text refers to *sole possible inference* as justifying direction of verdict for the defendant instead of the usual rule of *"only reasonable inference,"*—the latter stated by Justice Grimball. This seems to me to closely approximate, if not quite state, our rule, clearly established at least about a century ago and faithfully followed since.

In 8 C. J. S., Bailments, § 50, p. 349, is found the following, with Georgia and Indiana cases noted in support: "There are also authorities broadly holding that showing that the goods were burned, destroyed, or stolen does not overcome the presumption of the bailee's negligence arising from his failure to return them."

I would sustain the trial judge in his rulings and affirm the judgment of the Circuit Court.