BRUNSON & BOATWRIGHT v. ATLANTIC COAST LINE R. R. CO.

COMMON CARRIER—FREIGHT—WAREHOUSEMAN—BAILEE.—When a carrier has completed its carriage of freight its liability as carrier remains until the lapse of a reasonable time for consignee to remove after notice, it then becomes a warehouseman, so long as the freight remains in its custody until it notifies consignee that it will not insist on storage charges, or hold longer as warehouseman, as such it is held to ordinary care; after this a further holding is as gratuitous bailee and as such it is held to slight care.

*Whitney Mfg. Co.* v. *R. R.*, 38 S. C., 365, *distinguished from this.*

Before ALDRICH, J., Darlington, November Term, 1904. Affirmed.

Action by Brunson and Boatwright against Atlantic Coast Line Railroad Co. From judgment for plaintiff, defendant appeals on following exceptions:.

"1. Because it appears, from the pleadings, the contract of carriage is alleged and admitted; that is, that the defendant undertook to transport the goods to Darlington, to notify the plaintiff, and, upon surrender of the bill of lading, to deliver the goods. The testimony of the plaintiff proves beyond cavil that all this was done. There was, therefore, no issuable fact for the jury, and his Honor should have so held, and either have directed a verdict for the defendant or granted the motion for a nonsuit.

"II. Because his Honor, the Circuit Judge, should have held, on the motion for a new trial, that the evidence of the plaintiffs themselves conclusively showed that the goods were delivered to them; that they received them, removed a part and had reasonable time to remove all of them, but did not do so, to subserve their own convenience; that there was no testimony to the contrary, and should have set aside the verdict of the jury.

"III. Because the evidence of the plaintiffs themselves conclusively showed that the Bank of Darlington had misplaced the bill of lading and could not find the same in time for the plaintiffs' drayman to haul the goods and attend to his other duties on the day they were received by and delivered to the plaintiffs, and his Honor should have so held, and should have set aside the verdict of the jury.

"IV. Because the verdict of the jury was against the overwhelming weight of the evidence, which showed—(a) that the contract of carriage was completed; (b) that there had been reasonable time to inspect and remove the goods before delivery and even after delivery; (c) that they were left on the premises of the defendant because the bank could not find the bill of lading, and by the plaintiffs for their convenience; (d) that the goods were destroyed through no fault of the defendant, and his Honor should have so held, and should have set aside the verdict of the jury.

"V. Because, from the testimony of the plaintiffs, it appeared that the contract of carriage had absolutely terminated—the goods received and receipted for, a part being actually hauled away. There was, therefore, no question of reasonable time in which to receive the goods, and his Honor erred in charging the jury that the plaintiffs were entitled to reasonable time in which to remove the goods after they were delivered."

*Messrs. P. A. Wilcox* and *W. F. Dargan,* for appellant. The latter cites: *No issue for jury:* 38 S. C., 365; 41 Am. R., 749; 28 Am. Dec., 57. *Respondent's delay in removing freight should not be charged to appellant:* 17 L. R. A., 696.

*Mr. E. O. Woods,* contra, cites: *Grounds of motion for new trial not appearing in case, exceptions thereon cannot be considered:* 70 S. C., 77; 73 S. C., 235.

January 14, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action to recover the value of thirty-three barrels of flour destroyed by fire while in the defendant's depot.                                    •

The Lexington Roller Mills Co. delivered to the defendant at Lexington, Ky., forty barrels of flour to be transported to Darlington, S. C. A draft with the bill of lading attached was sent to the bank, with the instructions to notify the plaintiffs when the flour arrived. On the 23d of September, 1899, the plaintiffs paid the draft, delivered the bill of lading to the defendant, and removed six of said barrels of flour. On the same day all the other flour except one barrel was consumed by fire. The contention of the defendant is thus set out in its answer:

"The defendant alleges that the forty barrels of flour shipped to the plaintiffs, as alleged in the complaint, were delivered at Darlington, their destination, several days before the 23d day of September, 1899; were unloaded from

the cars into this defendant's warehouse, and plaintiffs were immediately notified of said arrival and requested to remove the same; that this the plaintiffs, for their own convenience, failed and neglected to do, and waited until the 23d of September, 1899, when all of the said flour was received by them and a part thereof hauled away and a part thereof left by the plaintiffs in the warehouse of the defendant, for their own convenience and at their own risk, where the same, left as aforesaid, was destroyed by fire on the night of the 23d of September, 1899, through no fault or negligence of this defendant."

At the close of the plaintiff's testimony, the defendant made a motion for a nonsuit on the following grounds, which was refused:

"First. From the pleadings, the contract of carriage is alleged and admitted; that is, that the defendant undertook to transport the goods to Darlington, to notify the defendant, and upon surrender of the bill of lading to deliver the goods. The testimony of the plaintiff proves all this beyond cavil to have been done.

"Second. From this testimony, it appears that the defendant did all that it undertook to do. There is no question in this case of delivery. The plaintiffs prove delivery."

The defendant presented the following requests to charge:

"First. If from the evidence the jury believes that the freight on the goods was paid, and that they were receipted for by the plaintiffs, and then a portion of them left in the warehouse or depot, the contract of carriage was completed, and the defendant could not be held liable as a common carrier, and the verdict should be for the defendant.

"Second. That it was the duty of the defendant to transport the goods safely to their destination and notify the plaintiffs of the arrival of the same, and deliver the same to the plaintiffs upon surrender by them of the bill of lading and upon payment of the freight, and if the jury finds from the evidence that all this was done, and that the plaintiffs

accepted and receipted for the goods, the verdict should be for the defendant."

The presiding Judge charged these requests after adding:

"But if the railroad company put the flour into its warehouse, Brunson was entitled to a reasonable time to get it out."

The jury rendered a verdict in favor of the plaintiffs for $196.31, whereupon the defendant made a motion for a new trial on the grounds set out in the exceptions which will be reported.

The main question in the case is whether the undisputed testimony showed a delivery to the plaintiffs. As the fire occurred while the flour was in defendant's depot, and, therefore, in its actual possession, it sustained to the plaintiffs either the relation of common carrier, warehouseman, or gratuitous bailee. When goods transported by a railroad company arrive at their destination, its liability as a common carrier continues until the consignee has a reasonable time within which to remove them. But even after the lapse of a reasonable time after its liability as a common carrier has ceased to exist, it is nevertheless liable, by operation of law, as a warehouseman, although the goods may not have been unloaded and deposited in a warehouse used for storing freight, technically termed a warehouse. *Spears & Colton* v. R. R., 11 S. C., 158 *Bristow* v. R. R., 72 S. C., 43, 51 S. E., 529. Until a reasonable time has elapsed after arrival the common carrier is practically liable as an insurer; but after that time it is only bound as a warehouseman to exercise ordinary care. As a warehouseman the railroad company has the right to exact storage charges as long as such relation exists in the particular case, and until it ceases to be a warehouseman its liability for ordinary negligence continues. The fact that it has the right as a warehouseman to collect storage charges makes it a bailee for hire and prevents it from claiming that it was merely a gratuitous bailee, at least before it gives notice that it will not insist upon such charges, and will not longer hold pos-

session of the property as a warehouseman, which the testimony does not show was done in this case. Therefore, the defendant was not a gratuitous bailee and must necessarily sustain to the plaintiffs either the relation of common carrier or warehouseman.

But whether the defendant sustained to the plaintiff the relation of common carrier, warehouseman, or gratuitous bailee, and conceding that there was a constructive delivery, the motion for nonsuit and new trial were properly refused.

When the plaintiffs showed that they were the owners of the flour and that the defendant failed upon demand to surrender to them the actual possession thereof, after it had arrived at its destination, they made out a *prima facie* case. *Jenkins* v. *R. R.,* 73 S. C., 289. It was then incumbent upon the defendant, in order to escape liability as a common carrier, to show that a reasonable time had elapsed before the property was destroyed by fire, or that it was not responsible as a warehouseman by reason of the fact that it had exercised ordinary care, or that it was not liable as a gratuitous bailee, because it had used slight care.

The presiding Judge's charge was too favorable to the defendant.

The appellant relies upon the case of *Whitney Mfg. Co.* v. *R. & D. R. Co.,* 38 S. C., 365, 17 S. E., 147; but it is not conclusive of the question under consideration, for the reason the Court held in that case, that there was an *actual* delivery.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.