14762

## McLAUGHLIN v. SEARS, ROEBUCK & COMPANY

### (199 S. E., 413)

*Messrs. Benet, Shand & McGowan,* for appellant,

*Messrs. James H. Hammond* and *E. J. Best,* for respondent,

November 2, 1938.

The opinion of the Court was delivered by Mr. Justice Baker.

In this action actual and punitive damages are sought for the alleged malicious, intentional, willful and fraudulent ap-

propriation and conversion by appellant of four used automobile tires, the property of respondent, of the alleged actual value of ten dollars.

The answer of appellant was a general denial.

A trial of the case resulted in a verdict for respondent (plaintiff), in the sum of ten dollars actual and one hundred dollars punitive damages.

At the conclusion of respondent's testimony, appellant moved "for a nonsuit on the ground that this case resolves itself into a gratuitous bailment." The presiding Judge refused the motion, holding that it was a question for the jury as to whether or not the length of time—six or seven months—respondent had waited to call for his tires, was an unreasonable time. Upon the announcement of this ruling, appellant further moved for a nonsuit as to punitive damages for that "there has been no fraud, or willfulness, or wantonness shown   *   *   *." The trial Judge held that he could not say, as a matter of law, that there was no evidence of a willful conversion, although to his mind, it was a very close question; and refused the motion.

At the conclusion of the testimony appellant moved for a directed verdict on the same grounds as for a nonsuit, which motion was likewise overruled.

Also a motion for a new trial was made and refused. The grounds of this motion are not shown in the transcript of record, and the order refusing the motion merely states that in the opinion of the trial Judge "there was a scintilla of competent evidence to be submitted to the jury under the authorities of *Turner v. American Motorists Ins. Co.,* 176. S. C., 260, 180 S. E., 55." We will therefore not directly consider appellant's Exception 3 relating to the refusal to grant a new trial, but this in no wise penalizes appellant since the same questions undertaken to be raised by Exception 3 will necessarily have to be discussed and passed upon under the other exceptions to the refusal of the trial Judge to grant the nonsuit motions, and motion for a directed verdict.

Appellant's Exceptions 1, 2 and 4 are as follows:

1. That his Honor erred in refusing motion of the defendant for a nonsuit made on the ground that this case resolves itself into gratuitous bailment and that a gratuitous bailee can be held responsible only for bad faith or gross negligence, the error being that there was no testimony to show either bad faith or gross negligence.

2. That the County Judge erred in refusing to grant the motion for the direction of a verdict in favor of the defendant in that the defendant was acting as a gratuitous bailee and that to be liable to the plaintiff for either actual or punitive damages it would be necessary for the plaintiff to show that the defendant was guilty of bad faith or gross negligence, the error being that there was no testimony to show that the defendant was guilty of either gross negligence or bad faith.

4. That the trial Judge erred in refusing to direct a verdict for the defendant as to punitive damages, the error being that there was no evidence of any fraud, willfulness or wantonness on the part of defendant which would warrant the infliction of punitive damages.

In passing upon these exceptions, it becomes necessary that we briefly state the pertinent facts as disclosed by the testimony in the record.

During June or July, 1936, respondent was the owner of a '27 model Dodge car and purchased of appellant four new cheap tires therefor, on which no trade-in value was allowed for respondent's old tires on the car. It took some little time to change the tires, so one of appellant's agents drove respondent to his office in respondent's car, and drove the car back to the place of business of appellant, changed the tires and then returned the car to respondent. At that time "I paid him for the tires, and he showed me where he had parked my car. I looked in the back, and the old tires were not there, and I asked him where my old tires were, and he said that he was sorry, but that he had forgotten to put them in the automobile; that he would go back to the

store, and tie them up with string, and put a card on them, and that I could get them any time. I had a spare tire besides the four new ones, so I didn't need them right then, and I didn't go back for them for some time." Respondent did not call for his old tires for "five, six, or seven months later," at which time the old tires could not be found, and respondent was informed that in hauling out junk, the tires had probably been taken out. A clerk for appellant asked respondent if he would be satisfied with tires of ·a similar character and respondent so agreed. Respondent returned in about two weeks, at which time an.agent of appellant stated he had put aside two tires for respondent, but in turn these tires could not be found, and it was discovered had been sold the day before. Respondent then demanded $10.00 for his old tires which had been lost, and according to his testimony and the testimony of one other, respondent had been offered $10.00 for his old tires at the time he bought the new tires from appellant. The local manager of appellant refused to pay any amount, giving as his reason that the tires had been left there at respondent's risk. In connection with the above, it should be noted that the tires were of odd size and very little used, and hence similar tires were but seldom traded in to appellant. Following the refusal of appellant's manager to pay $10.00, this action was forthwith instituted.

In approaching a solution of the questions involved, we must determine (a) the status occupied by appellant under the above facts and (b) the duty owed respondent by appellant under such status.

This case is a concrete example of the much-quoted statement appearing in decisions of Courts of Record that "the facts make the law." It appears from the above statement of the testimony in the record (and of course from the entire record) that a bailment of some description was thus created, and had the loss of the tires occurred within a "few days" following the transaction of

the purchasing of the new tires, it may have rendered difficult to determine the exact class to which the bailment belonged. There is no testimony in the record as to when respondent's old tires were allowed to get out of the possession of appellant, but there is testimony from which a reasonable inference can be drawn that the tires were not disposed of via the junk pile or otherwise for an undetermined period of time. Therefore if the bailment *ab initio* was not entirely for the sole benefit of the respondent (and we are not so holding), it ripened into one for the sole benefit of the bailor (respondent). It became what has been classed by the old law lexicographers, a "gratuitous bailment," although modern law lexicographers warn against a liberal use of such terminology. Despite such warning, the facts of this case so clearly bring this bailment in such class, we do not hesitate to so denominate it.

In *Spencer v. First Carolinas Joint Stock Land Bank,* 167 S. C., 36, 165 S. E., 731, although deciding that the complaint in the case was based alone on the theory of conversion, and that bailment was not involved, stated *inter alia* (page 733) : "Under the law, a gratuitous bailee 'can be held responsible only for bad faith, or gross negligence. * * * ' " quoting from 3 R. C. L., 99.

In connection with the above, we quote with approval from 6 Am. Jur., Bailments, § 253, at page 341 :

"In respect of the duty of care in bailments for the sole benefit of the bailor, while it must be acknowledged that the authorities for the most part still employ the language of the early general rule that the bailee is bound to the exercise of at least slight care of diligence, and is liable for loss or injury due to his gross negligence only, probably none will dissent from the proposition, supported expressly by an increasing number of the modern authorities, that in every case good faith requires a bailee without reward to exercise reasonable care; and what is reasonable care must materially depend upon the nature, value, and quality of the thing

bailed, its liability to loss and injury, the circumstances under which it is deposited, and sometimes upon the character and confidence and particular dealings of the parties. Thus, the character and customs of the place where the goods are to be kept, the bailee's business or situation and the facilities and skill reasonably to be expected of him, whether or not the bailee is chargeable with notice that the subject of the bailment is of more than ordinary importance, and the bailor's knowledge or ignorance of the bailee's mode of keeping the property are all criteria useful in determining what, in the particular case, is the measure of care required of the bailee.

"The rule that a gratuitous bailee must exercise reasonable care recognizes, of course, that a circumstance to be considered in determining what is reasonable care is the fact that the bailee is acting without reward. In keeping with the rule that when a contract is fairly open to two constructions, it is legitimate to adopt the one which equity would favor, the Courts are indisposed to extend by inference the perils of an unprofitable trust, and the view is taken that every bailee without reward ought to be given the least trouble consistent with his undertaking.

"The omission of the reasonable care required is the negligence, whether it is denominated 'gross negligence' or simply 'negligence,' which creates the bailee's liability for loss or injury. Whether in a particular case this liability exists is ordinarily a question of fact for the jury to determine under proper instructions from the Court."

While the respondent was very negligent in not calling for his tires at an earlier time, yet, if appellant desired to rid itself of the bailment, it could easily have notified respondent to this effect and thus terminated any possible liability for the loss of the tires. Having failed to do this, under the testimony, it became a question for the jury to pass upon if respondent's failure to call for his tires within five, six or seven months warranted ap-

pellant in assuming that respondent had abandoned his declared intention of getting these old tires; and, of course, the value of the tires was also a question to be settled by the jury. Therefore, on the motion for a nonsuit as to actual damages, the presiding Judge committed no error.

The motion for a nonsuit as to punitive damages presents a different view. We are unable to reach a conclusion that the testimony of respondent discloses anything from which a reasonable inference can be drawn that appellant either maliciously, intentionally, willfully or fraudulently appropriated and converted the tires to its own use and benefit. And if this view is doubtful on the motion for nonsuit, there can be no doubt about the correctness of it when the testimony on behalf of appellant is considered. Without herein setting forth this testimony, but which we have read with care, we conclude that having refused to grant appellant's motion for a nonsuit, a verdict as to punitive damages should have been directed.

We need not discuss the refusal of the motion for a directed verdict as to actual damages. This is covered in our discussion of the exception relating to the refusal of the trial Judge to grant the motion for a nonsuit generally.

It is the judgment of this Court that the judgment appealed from be affirmed as to actual damages and reversed as to punitive damages.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.