15519

ALBERGOTTI *ET AL.* v. DIXIE PRODUCE COMPANY, INC.,
*ET AL.*

(25 S. E. (2d), 156)

September, 1942.

*Mr. Heyward Brockinton,* of Columbia, S. C., Counsel
for Appellants,

*Mr. T. P. Taylor,* of Columbia, S. C., Counsel for Respondent,

March 30, 1943.

The unanimous Opinion of the Court was delivered by Mr. Associate Justice Baker:

The appellants own and operate a cold storage warehouse in Columbia, S. C. The respondents are engaged in the business of buying and selling pecans. During the months of April and May, 1941, the respondents stored with appellants about 20,000 pounds of pecans, all of which were shelled, and in sealed containers at the time of delivery for storage, and for which appellants issued their warehouse receipts; and printed on these receipts was the following: "Not responsible for shrinkage or losses caused by floods or other causes beyond our control."

From time to time, as orders were received therefor, respondents withdrew from appellants' warehouse pecans corresponding with the order being filled until there remained in storage only about 560 pounds of pecans. The withdrawals commenced within two weeks to thirty days after the pecans were placed in storage, and continued into November, 1941.

In April, 1942, upon instructions of respondents, the appellants shipped to respondents at Saint Matthews, S. C., the remaining pecans on storage with the exception of 60 pounds which could not then be located, but which were thereafter found, but refused by respondents.

When these pecans were received and opened at Saint Matthews, S. C., they were found to be in such a molded condition and permeated with a foreign odor, largely that of beer, until they were unfit for sale or consumption and became a total loss to respondents. The respondents, upon receipt of this shipment, forthwith notified appellants of the condition of the pecans, and brought to Columbia about ten pounds thereof which were exhibited to appellants. In the meanwhile, the 60 pounds of pecans which could not be located when the others were shipped to Saint Matthews had been found, and were shown to respondents, who refused to accept them, the respondents claiming that the pecans were molded and unfit for sale or human consumption. There is a serious conflict in the testimony as to the condition of the 60 pounds of pecans which were never actually re-delivered to respondents, but the issues raised by the exceptions on appeal to this Court make it unnecessary that we discuss this testimony.

The respondents demanded of appellants that they be paid for the loss of these pecans, which demand was refused, and this action was commenced, the respondents alleging "that through the negligence, wilfulness, and wantonness of the defendants (appellants)" in not using due care in keeping said pecans, they had become molded and unfit for sale and human consumption, to their damage in the sum of two hundred and fifty dollars.

The appellants did not move to have respondents make their complaint more definite and certain, but answered denying negligence on their part; demanded strict proof of damage to any of the pecans which had been stored with them; alleged that the 60-pound lot was then in storage in apparently good condition, and had been tendered to respondents and by them refused; and as a defense to the alleged negligence on their part, alleged that the pecans were stored in a storage room which was kept dry and at a uniform temperature during the entire time of storage.

On the day of the trial, the appellants were permitted to amend their answer so as to allege that since the filing of their answer, fifty and one-half pounds of the sixty-pound lot of pecans which respondents had refused to accept had been sold for $21.03, and that after deducting commissions and storage, there remained $15.16, which amount they then tendered to the respondents.

The case came on for trial before Honorable A. W. Holman, Judge of the Richland County Court, and a jury. At the conclusion of the taking of all testimony, the appellants made a motion for a direction of verdict in their behalf on the grounds: "(1) That no actionable negligence has been shown by the plaintiffs (respondents) upon which a recovery can be had; (2) That under the contract which is in evidence, the defendants (appellants) are not responsible for shrinkage or loss caused by floods or other causes beyond our control". This motion was refused, and the case was submitted to the jury, resulting in a verdict for the respondents in the amount of $197.52.

While a motion for a new trial was made and refused, the appeal is from the refusal of the trial Judge to direct a verdict in favor of appellants, and the exceptions relate solely to the grounds upon which the motion for direction of verdict was based. There is no exception to the charge of the trial Judge to the jury, and hence that portion of appellants' printed argument directed to his charge cannot be considered.

The sole issue in this case is: Was there any testimony from which a reasonable inference could be drawn (1) that the appellants were negligent in the storing of these pecans, and (2) that such negligence was the proximate cause of the injury to the pecans?

The testimony in behalf of respondents was that the pecans in question were delivered to appellants in sealed containers made from pasteboard (it being the standard container used for shipping pecans) in good condition, and that when they

were returned to them, the containers, while still sealed, were damp and the contents (pecans) were molded and had foreign odors, especially that of beer; and that when they went to the storage room of appellants to examine the sixty-pound lot of pecans hereinbefore referred to, the storage room was very damp, and fan in the room was frosted, and the odor of beer was noticeable. It was the contention of respondents that the damage to the pecans was caused by excessive humidity prevailing in the storage room.

The testimony of appellants was that this storage plant was practically new, and equipped with the most modern type of refrigeration, with controls which governed not only the temperature of the storage rooms, but also the humidity; that the refrigeration system was serviced by an expert, and was not out of order at any time, the servicing needed being some adjustments—bolts to be tightened or fans to be oiled or replaced after summer, but that there was never any major trouble; that the storage plant was equipped with a fan system which permitted the storage of all food stuffs, even the generally accepted obnoxious products, with the exception of bananas and onions, together; that beer was never stored in the same storage room with the pecans; that respondents had the privilege of examining the pecans at any time during the period of storage, which appellants did not have, the pecans being in sealed containers. There was also some rather indefinite testimony as to the length of time pecans could be stored without damage unless the temperature in the place where stored was kept at or below freezing.

The foregoing is merely a brief outline of the testimony had upon the trial of the case, but is sufficient for an understanding of the question involved.

From a study of the decided cases in this State, it would appear that our Court has recognized that certain presumptions may arise in bailment cases, especially as to warehousemen, which overlap and shadow the oft-repeated statement found in negligence cases, that

the doctrine of *res ipsa loquitur* does not prevail in this State. In other words, in warehouse bailments, when the bailor shows that the bailee has not returned the property, the subject of the bailment, or that the property has been lost by theft or fire, or that it has been returned in a damaged condition, such bailor has made out a *prima facie* case, and the duty is then shifted to the bailee to show that he has used ordinary care in the storage and safe-keeping of the property. From these facts, coupled with any testimony on the subject the bailor may introduce, it is for the jury to say whether the bailee has been negligent, that is failed to use ordinary care. Of course if upon all the testimony in the case the only reasonable inference that can be drawn therefrom is that the bailee used due care, it would then be the duty of the trial Judge to direct a verdict in the bailee's favor.

In approving the rule hereinabove outlined, Mr. Justice Woods, in writing the opinion of the Court in the case of *Fleischman, Morris & Co. v. Southern Railway Co.*, 76 S. C., 237, 56 S. E., 974, 977, 9 L. R. A., (N. S.), 519, stated: "* * * This rule is entirely reasonable. The facts surrounding the loss, particularly the precautions taken against it, are usually known to the bailee or ascertainable by him, On the other hand, the owner of the property cannot be supposed to know the details of a warehouseman's business, for he is often hundreds of miles away. With the great modern development of the warehouse business, we venture to think the injustice of the rule which exempts a warehouseman from responsibility to the owner on the bald proof of loss or injury to the goods by fire, by theft, or otherwise, will become more and more apparent. In most cases, to require the owner to assume the burden of showing that the fire or theft was due to the lack of ordinary care is to impose an impossible task and place him more than ever at the mercy of the warehouseman. We are satisfied, therefore, to adhere to the somewhat exceptional rule laid down in this state,

notwithstanding the great number of opposing authorities in other jurisdictions."

The *Fleischman case* is recognized as a leading case in this State, and has been recently cited and quoted in *Gilland v. Peter's Dry Cleaning Co.*, 195 S. C., 417, 11 S. E. (2d), 578.

Considering all of the testimony, it is our opinion ■ that the trial Judge did not err in refusing the motion of appellants for a direction of verdict in their favor.

Affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.