18023

SHORELAND FREEZERS, INC., Appellant, v. TEXTILE ICE & FUEL COMPANY, Inc., Respondent

(129 S. E. (2d) 424)

538

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-ville, *for Appellant,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Respondent,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant, in Reply,*

February 7, 1963.

Lewis, Justice.

The plaintiff was engaged in the business of processing and packing frozen foods and delivered in 1959 a quantity of frozen vegetables to the defendant for storage in its frozen food storage warehouse at Greenville, South Carolina. The plaintiff claimed that a portion of these vegetables while in storage were damaged through the negligence of the defend-

ant and brought this action to recover the damages allegedly sustained. The defendant denied liability and filed a counterclaim for the accumulated storage charges. Upon the trial of the case and at the conclusion of the testimony, the lower court granted motions of the defendant for a directed verdict in its favor, both as to the claim of the plaintiff for damages to the goods stored in the defendant's warehouse and on its counterclaim for storage charges. From the judgment so entered, the plaintiff has appealed.

The motion of the defendant for a directed verdict as to plaintiff's claim for damages was made upon the grounds, among others, that there was no evidence (1) that the frozen foods were in good condition when delivered to the defendant or (2) that the defendant failed to exercise due care in the storage thereof. The lower court granted this motion upon the first ground. Questions arising in the lower court under both grounds of the motion are presented, however, in this appeal, the first under the exceptions of the plaintiff and the second under the additional sustaining ground filed by the defendant. There is the further question as to whether the lower court erred in directing a verdict for the defendant for the amount of the storage charges on the goods alleged to have been damaged.

The defendant operated a warehouse and when the plaintiff delivered to it the goods in question for storage the relationship of bailor and bailee arose for their mutual benefit.

Such bailee is not an isurer of the property left in his custody, but is required to exercise ordinary care, or the degree of care which would be exercised by a person of ordinary care and prudence in the protection of his own property. *Kelley v. Capital Motors, Inc.*, 204 S. C. 304, 28 S. E. (2d) 836; *Gilland v. Peter's Dry Cleaning Co.*, 195 S. C. 417, 11 S. E. (2d) 857.

Under the decided cases in this State, liability of a bailee under a bailment for mutual benefit arises upon a showing that (1) the goods were delivered

to the bailee in good condition, (2) they were lost or returned in a damaged condition, and (3) the loss or damage to the goods was due to the failure of the bailee to exercise ordinary care in the safekeeping of the property. The burden of proof in such cases, in the first instance, rests upon the bailor to make out a *prima facie* case. This has been done when the bailor proves that he delivered the goods to the bailee in good condition and their loss or return in a damaged condition. When the bailor has so proven, the burden is then shifted to the bailee to show that he has used ordinary care in the storage and safekeeping of the property. *Fleischman, Morris & Co. v. Southern Railway,* 76 S. C. 237, 56 S. E. 974, 9 L. R. A., N. S., 519; *Marlow v. Conway Iron Works,* 130 S. C. 256, 125 S. E. 569; *Gilland v. Peter's Dry Cleaning Co., supra,* 195 S. C. 417, 11 S. E. (2d) 857; *Albergotti v. Dixie Produce Co., Inc.,* 202 S. C. 357, 25 S. E. (2d) 156; *Kelley v. Capital Motors, Inc., supra,* 204 S. C. 304, 28 S. E. (2d) 836; *Arkwright Mills v. Clearwater Mfg. Co.,* 217 S. C. 530, 61 S. E. (2d) 165.

The lower court held that the plaintiff failed to make out a *prima facie* case in that there was no evidence presented from which a reasonable inference could be drawn that the goods in question were in good condition when delivered to the defendant. Whether or not the lower court was correct in such ruling presents the first question for determination.

Upon this issue, the testimony shows that during the months of October, November, and December of 1959 the plaintiff delivered three lots of frozen vegetables by refrigerated trucks to the defendant's warehouse for storage. These vegetables were packaged in one and two pound polyethelene bags which in turn were packed in cartons containing either 12-two pound or 24-one pound bags. The foods were stored in the defendant's warehouse at Greenville for subsequent delivery to the retail outlets in the area as they were sold by plaintiff's representatives.

Over a period of several months after the delivery of the vegetables to the defendant, numerous withdrawals were made by the purchasers from the three lots of vegetables. The withdrawals were not identified as coming from any particular lot of vegetables, but were indiscriminately made from the foods on storage. There was testimony that, when deliveries were made to the purchasers, a representative of the brokerage firm handling the sales for plaintiff would shortly thereafter inspect the foods and assist the purchaser in displaying them for sale. For the first several months after the foods were delivered to the defendant the vegetables withdrawn were found to be in good condition. Subsequently, however, it was found that some of the vegetables withdrawn were frozen in a solid block, instead of the individual pieces being frozen loosely and separately in the bags as usual. The testimony showed that the vegetables which were frozen in a solid block were worthless. Upon the withdrawal of damaged foods from the defendant's warehouse, a further investigation was made and it was found that the packages remaining in storage were also frozen in a solid block and worthless.

No inspection of the frozen vegetables was made by either the plaintiff or the defendant at the time of their delivery to the defendant's warehouse, and the foregoing testimony was relied upon by the plaintiff to show the condition of the food when it was delivered to the defendant. In other words, the plaintiff contends that proof of the withdrawal of a portion of the foods in good condition was some evidence as to the condition of the entire lot of vegetables when delivered to the defendant. We think this contention sound. The foods in question were delivered to the defendant in October, November, and December, 1959. Shortly thereafter withdrawals were indiscriminately made from the merchandise in storage and were found to be in good condition. After withdrawals of vegetables in good condition over a period of several months, damaged goods were withdrawn and investigation showed that all of the

remaining food in storage was damaged and worthless. We think that such circumstances give rise to a reasonable inference that all of the vegetables were in good condition when delivered to the defendant, *City of Dallas v. Milum, Tex. Civ. App.,* 200 S. W. (2d) 833, and that the lower court was in error in directing a verdict for the defendant upon the ground that there was no evidence that the frozen foods were in good condition when delivered. The testimony presented an issue of fact which should have been submitted to the jury for determination.

The defendant contends, however, under its additional sustaining ground, that there was no evidence from which a reasonable inference could be drawn that the defendant failed to exercise due care in the storage of the foods delivered to it by the plaintiff.

Briefly, there is testimony from which a reasonable inference may be drawn that the vegetables were delivered to the defendant in sealed containers in good condition, frozen loosely and separately in the packages; that subsequently a portion of the vegetables were found frozen in a solid block and, because of that fact, were worthless; that an inspection of the storage room of the defendant revealed a considerable amount of clear ice on the floors, indicating that there had been marked temperature changes in the storage room permitting the frost that normally collects to melt and then re-freeze in the form of ice; and that such a change in the temperature in the storage room would result in a partial thawing and re-freezing of the vegetables in a solid block. There was also testimony, on the other hand, that the storage room in which the plaintiff's foods were stored was constantly maintained at a temperature of 0°F; that frozen foods belonging to other customers were stored in the same room and no damage was caused to them; and that, if the vegetables were originally packaged by plaintiff with too much moisture content, they would ordinarily freeze in a solid block.

Considering all of the testimony, we think it sufficient to take the case to the jury on the issue of whether the defendant failed to exercise ordinary care in the storage and safekeeping of the goods delivered to it by the plaintiff. *Albergotti v. Dixie Produce Co., Inc., supra,* 202 S. C. 357, 25 S. E. (2d) 156.

The last question to be decided relates to the liability of the plaintiff for storage charges on the goods involved in this litigation. The lower court directed a verdict in favor of the defendant for such charges and the plaintiff contends that this was error. The ruling of the lower court was based upon the erroneous conclusion that there was no evidence upon which to base liability of the defendant for the damages sustained to the goods in question. Therefore, the possible effect of the negligent injury by the defendant to the goods while in storage upon the right of the defendant to collect storage charges was not considered. Since the issue must be dealt with in the retrial of the case, it is well to state the general legal principles which will control its determination.

A warehouseman has the right to collect a reasonable or an agreed charge for the storage of property deposited with him for safekeeping. When the plaintiff deposited the frozen foods in question with the defendant for storage, there was an agreement to pay a charge for such services. Clearly, if the defendant exercised due care in the storage of the goods, it would be entitled to the agreed storage charges. Disagreement arises between the parties as to the right of a warehouseman to recover storage charges on goods which are damaged through his negligence.

The rule governing the right of a warehouseman to collect storage charges on goods damaged through his negligence is stated as follows in 56 Am. Jur. 369, Section 101: "Moreover, the fact that the goods are damaged by the negligence of the warehouseman does not preclude the right of the warehouseman to storage charges, where the warehouseman is made to pay compensation for the dam-

ages." The rule and its basis is thus stated in the case of *Diamond Ice & Storage Co. v. Klock Produce Co.,* 110 Wash. 683, 189 P. 257, 260:

"Under the final assignment of error the appellant argues that the respondent is not entitled to recover storage charges on the eggs and cheese because it breached its contract of storage; that liability arises from the performance of contracts, not from their nonperformance; and hence there can be no liability here because it has been conclusively adjudged that there was no performance. But it is a sufficient answer to this to say that the storage company made good to the produce company the losses the latter sustained by its breach of performance. After these losses were made good the produce company stood in the position in which it would have stood had the stored articles been returned to it in due course and without injury. In other words, if a warehouseman, storing goods for another, makes good to that other all losses caused by his negligent storing, it is equivalent to a proper delivery, and entitles him to his storage charges."

The foregoing rule is entirely reasonable and will govern the determination of the liability of the plaintiff for storage charges on the goods involved in this litigation.

In view of the necessity for a new trial upon the issue of the liability of the defendant for damage to the goods in question, it is proper to reverse the direction of verdict in favor of the defendant for the storage charges, leaving all issues between the parties to be determined at that time in the light of the principles herein set forth.

Reversed and remanded for a new trial.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, J.J., concur.