538 S.E.2d 268

Mark HADFIELD, Respondent,

v.

Sam GILCHRIST, d/b/a Gilchrist's Service Center, and
d/b/a Gilchrist Towing Company, Appellant.

No. 3246.

Court of Appeals of South Carolina.

Heard Sept. 12, 2000.

Decided Oct. 2, 2000.

Russell Brown, of Charleston, for Appellant.

Richard W. Lingenfelter, Jr., of Hanahan, for Respondent.

ANDERSON, Judge:

Mark Hadfield filed this action against Sam Gilchrist, d/b/a Gilchrist's Service Center, and d/b/a Gilchrist Towing Company (Gilchrist) for damages sustained by Hadfield's vehicle while impounded on Gilchrist's lot. The magistrate awarded Hadfield $4,035.00. The Circuit Court affirmed the decision of the magistrate. Gilchrist appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Gilchrist owns a motor vehicle towing service and maintains a storage facility for the retention of the towed vehicles. Gilchrist operates under a license issued by the City of Charleston.

Hadfield, a medical student at MUSC, went to retrieve his 1988 Lincoln Continental from the parking spot where his wife parked the vehicle.[1] The parking spot, located near MUSC, was on private property owned by Allen Saffer. Hadfield's wife parked the vehicle on Saffer's property without Saffer's permission. The vehicle was not in the parking spot when Hadfield arrived as Saffer had called Gilchrist to have the vehicle removed.

Gilchrist towed Hadfield's car to his storage facility. Gilchrist maintained a chain link fence around the storage area, and had an employee on the lot around the clock. The employees' duties included periodically leaving the office to check on the storage area which was some distance away from the office.

Hadfield called to retrieve his vehicle, but was informed he would have to wait until the next morning and pay towing and

---

1. The magistrate found Hadfield's wife parked the vehicle there earlier that day. Gilchrist presented evidence the vehicle was parked there for several days.

storage fees. Upon Hadfield's arrival to pick up his car the following morning, he paid the fees. When he went to the storage area to collect his vehicle, Hadfield discovered the vehicle had been extensively vandalized. The vandals stole the radio/compact disc player, smashed windows, and pulled many electrical wires out of the dashboard. The vehicle depended heavily upon computers and never functioned properly after the incident. The vandals entered the storage area by cutting a hole in the fence. They vandalized between six and eight vehicles on the lot that night.

The magistrate, in summarizing Hadfield's testimony, concluded Hadfield's attempts to persuade Gilchrist to pay for the damages were futile. Hadfield secured estimates for the damage to the automobile. At trial before the magistrate, Hadfield offered the testimony of an Assistant Manager at Rick Hendrick Collision Center. He estimated the cost of the repairs at $4,021.43. Hadfield entered evidence showing replacement glass cost $185.00, excluding installation cost of $55. Hadfield left the vehicle on Gilchrist's lot as he could not afford to repair it. After more than 60 days elapsed, Hadfield sold the vehicle for $1,000.00.

The magistrate found Gilchrist liable for the damages as a bailee, and entered judgment in favor of Hadfield for $4,035.00. Gilchrist appealed to the Circuit Court, which affirmed the decision of the magistrate.

### STANDARD OF REVIEW

The standard of review to be applied by a Circuit Court in an appeal of a magistrate's judgment is prescribed by S.C.Code Ann. § 18–7–170 (1976):

> Upon hearing the appeal the appellate court shall give judgment according to the justice of the case, without regard to technical errors and defects which do not affect the merits. In giving judgment the court may affirm or reverse the judgment of the court below, in whole or in part, as to any or all the parties and for errors of law or fact.

In *Burns v. Wannamaker*, 281 S.C. 352, 315 S.E.2d 179 (Ct.App.1984), this Court amplified:

> As is readily apparent, Section 18–7–170 confers authority upon the Circuit Court to reverse a magistrate's findings of

fact when exercising appellate jurisdiction in an appeal from a magistrate's judgment. *See Dingle v. Northwestern R. Co.*, 112 S.C. 390, 99 S.E. 828 (1919); *Redfearn v. Douglass,* 35 S.C. 569, 15 S.E. 244 (1892); *cf. Vacation Time of Hilton Head Island, Inc. v. Kiwi Corp.*, [280 S.C. 232], 312 S.E.2d 20 (Ct.App.1984)(where the Circuit Court reversed a magistrate's findings of fact in an ejectment action).

*Burns,* 281 S.C. at 357, 315 S.E.2d at 182.

While the Circuit Court maintains a broad scope of review, our standard is more limited:

[T]he Court of Appeals will presume that an affirmance by a Circuit Court of a magistrate's judgment was made upon the merits where the testimony is sufficient to sustain the judgment of the magistrate and there are no facts that show the affirmance was influenced by an error of law [*Bagnal v. Southern Express Co.*, 106 S.C. 395, 400, 91 S.E. 334, 335–36 (1917); *Stanford v. Cudd,* 93 S.C. 367, 369–70, 76 S.E. 986, 986–87 (1913); *see* 5B C.J.S. *Appeal & Error* § 1817 at 152–53 (1958) ]. . . .

*Burns,* 281 S.C. at 357, 315 S.E.2d at 182. Our Supreme Court, in *Stanford v. Cudd,* 93 S.C. 367, 76 S.E. 986 (1913), held that where the testimony is sufficient to sustain a judgment of the magistrate's court, and it is affirmed on appeal to the Circuit Court, this Court will assume the Circuit Court affirmed the judgment on the merits, in the absence of facts showing the affirmance was controlled or affected by errors of law. The Court enunciated:

In obedience to the statute [S.C.Code Ann. § 18–7–170], the circuit court might have concluded that the magistrate erred in refusing some or all of the defendant's requests, or in admitting some or all of the testimony objected to by defendant, but the court might have thought, upon consideration of the case on the merits, that, notwithstanding such errors, the plaintiff was entitled to judgment; and as there was evidence which would have warranted such a conclusion, and as we cannot say that the judgment was affected or controlled by any error of law, it must be affirmed.

*Stanford,* 93 S.C. at 370, 76 S.E. at 987.

The rule is articulated in *Price v. Charleston & W.C. Ry.*, 93 S.C. 576, 77 S.E. 703 (1913):

As the circuit court is required to give judgment, in such cases, according to the justice of the case, without regard to technical errors and defects, which do not affect the merits [S.C.Code Ann. § 18–7–170], and as the record does not disclose the grounds upon which the court rendered its judgment, we must assume that it was rested upon some sound and meritorious ground, and sustain it, if the record discloses any such ground.

*Price*, 93 S.C. at 578, 77 S.E. at 703.

The Circuit Court judge's order in this case provided:

After careful review of: the Return of the Civil Appeal filed by the Magistrate, the pleadings, summary of witness testimony, the exhibits and the case law submitted by both parties, and appellant [sic] arguments by counsel representing each party, I find that according to the justice of the case, the Judgment of the Small Claims Court in the amount of $4,000.00 plus costs of $35.00 for a total of $4,035.00 is affirmed.

■ Unless we find an error of law, we will affirm the judge's holding if there are any facts supporting his decision.

### ISSUES

I. Did the Circuit Court err in applying the law of bailments?

II. Did the Circuit Court err in finding Gilchrist was responsible for damages?

### LAW/ANALYSIS

Neither the magistrate nor the Circuit Court judge made a finding as to the type of bailment created in this case. The type of bailment created may determine the standard of care the bailee, Gilchrist, must meet. Therefore, we review the law of bailments.

### I. BAILMENTS

■ A bailment is created by the delivery of personal property by one person to another in trust for a specific purpose, pursuant to an express or implied contract to fulfill that trust. 8A Am.Jur.2d *Bailments* § 1 (1997). *See Home*

*Indem. Co. v. Harleysville Mut. Ins. Co.*, 252 S.C. 452, 460, 166 S.E.2d 819, 824 (1969)("Bailment has been defined as the delivery of a chattel for some express or particular purpose upon a contract, express or implied, that, after the purpose has been fulfilled, then the chattel shall be redelivered to the bailor, or otherwise dealt with according to his directions.").

Bailments are generally classified as being for (1) the sole benefit of the bailor; (2) the sole benefit of the bailee; or (3) the mutual benefit of both. 8A Am.Jur.2d *Bailments* § 7 (1997). Bailments which benefit only one of the parties, the first and second classifications, are often described as gratuitous. *Id.*

### A. Gratuitous Bailment

"A gratuitous bailment is, by definition, one in which the transfer of possession or use of the bailed property is without compensation." 8A Am.Jur.2d *Bailments* § 8 (1997). For instance, a gratuitous bailment arises if the bailment is undertaken as a personal favor or is involuntary. *See United States v. Alcaraz–Garcia*, 79 F.3d 769 (9th Cir.1996)(gratuitous bailment arises if bailment is undertaken either involuntarily or as a personal favor); *Clott v. Greyhound Lines, Inc.*, 278 N.C. 378, 180 S.E.2d 102 (1971)(gratuitous bailment effected where baggage came into hands of carrier through accident or mistake); *McLaughlin v. Sears, Roebuck & Co.*, 188 S.C. 358, 199 S.E. 413 (1938)(finding that although the type of bailment created, where purchaser of new tires left old tires at vendor's place of business for between five and seven months after purchase, may have started as a bailment for mutual benefit, it ripened after time into a gratuitous bailment, solely for the benefit of the bailor).

A "gratuitous bailee" acts without expectation of reward or compensation. *See McLaughlin, supra.* To show the bailment was for the sole benefit of the bailor, the bailee must establish that it was not expecting compensation. The Court, in *Brunson & Boatwright v. Atlantic Coast Line R.R.*, 76 S.C. 9, 56 S.E. 538 (1907), illuminated:

> The fact that it has the right as a warehouseman to collect storage charges makes it a bailee for hire and prevents it from claiming that it was merely a gratuitous bailee, at least

before it gives notice that it will not insist upon such charges, and will not longer hold possession of the property as a warehouseman, which the testimony does not show was done in this case. Therefore the defendant was not a gratuitous bailee....

*Brunson,* 76 S.C. at 13–14, 56 S.E. at 539–40.

## B. Bailment for Mutual Benefit

■ By contrast, a bailment for the mutual benefit of the parties arises when one party takes the personal property of another into his or her care or custody in exchange for payment or other benefit. 8A Am.Jur.2d *Bailments* § 9 (1997). *See Gilland v. Peter's Dry Cleaning Co.,* 195 S.C. 417, 11 S.E.2d 857 (1940)(finding a bailment for mutual benefit of the parties where plaintiff delivered a dinner coat to a cleaning company for cleaning and pressing, and company was to be paid a consideration for its services).

## C. Constructive Bailment

■ Although a bailment is ordinarily created by the agreement of the parties, the agreement of the parties may be implied or constructive, and the bailment may arise by operation of law. 8 C.J.S. *Bailments* § 15 (1988). Such a constructive bailment arises when one person has lawfully acquired possession of another's personal property, other than by virtue of a bailment contract, and holds it under such circumstances that the law imposes on the recipient of the property the obligation to keep it safely and redeliver it to the owner. *Id. See also American Ambassador Cas. Co. v. City of Chicago,* 205 Ill.App.3d 879, 150 Ill.Dec. 755, 563 N.E.2d 882 (1990), *appeal denied,* 136 Ill.2d 541, 153 Ill.Dec. 370, 567 N.E.2d 328 (1991)(police department was constructive bailee of automobile it impounded at time of driver's arrest and thus had duty to keep automobile safely and deliver it to its owner). A constructive bailment may occur even in the absence of the voluntary delivery and acceptance of the property which is usually necessary to create a bailment relationship.

Gilchrist argues he towed the vehicle pursuant to the Charleston Municipal Ordinances, and the ordinances are for the sole benefit of the vehicle owners. Accordingly, he con-

tends, the relationship created is a gratuitous bailment. We disagree. Section 14–32 of the CITY OF CHARLESTON, S.C., MUNICIPAL ORDINANCES reads in pertinent part:

> No person shall abandon any motor vehicle on any public street or public grounds or upon privately owned property. No person controlling privately owned property shall permit any abandoned or unsafe vehicle to remain thereon.

Section 14–33 of the MUNICIPAL ORDINANCES provides:

(1) Any abandoned motor vehicle may be removed to a storage area for safekeeping by or at the direction of the Police Department or such other person charged with enforcing the provisions hereof.

Finally, CITY OF CHARLESTON, S.C., MUNICIPAL ORDINANCES § 14–34 states:

a. The owner of any removed vehicle, before obtaining possession thereof, shall pay to the city or, as appropriate, its agent storing said vehicle, all reasonable costs incidental to the removal and storage (of the vehicle) and locating of the owner.

b. Should such owner fail or refuse to pay the cost, or should the owner's identity or whereabouts be unknown and unascertainable after a diligent search and after notice as herein prescribed, the stored vehicle may be sold after twenty (20) days notice has been given to the department of motor vehicles before the date of sale, and after the vehicle has been held for not less than thirty (30) days.

Clearly, the ordinances provide for the payment to the city or its agent, the towing service, for the costs of towing and storage. Gilchrist charged Hadfield towing and storage fees.

The vehicle owned by Hadfield was plucked by Gilchrist from the private property of Saffer. Gilchrist acted pursuant to and by virtue of the licensing authority under the city ordinance. Quintessentially, the factual scenario encapsulated in this case is a paradigm of a "constructive bailment." We conclude a constructive bailment, for the mutual benefit of Hadfield and Gilchrist, was created.

## II.  BAILMENT ACTION/NATURE OF THEORY

Although contractual in nature, and involving the conveyance of personal property, an action for breach of the duty of care by a bailor sounds in tort.  *See* Kurt Philip Autor, Note, *Bailment Liability: Toward a Standard of Reasonable Care*, 61 S. Cal. L.Rev. 2117, 2124 (Sept. 1988) ("Perhaps the most fundamental variance in bailment classification results from the different theories upon which an action in bailment might rest.  Confusion is understandable considering the traditional adage that a bailment arises in contract, involves the conveyance of personal property, and is actionable sounding in tort."); SAMUEL WILLISTON, WILLISTON ON CONTRACTS § 8:1, at 12, 17 (Richard A. Lord ed., 4th ed. 1992) (bailment transaction is regarded as contractual but "it would perhaps have been better to treat these cases as falling within the domain of tort. . . .  [T]he true nature of the liability is not contractual at all, for if it were, the only question would be what the defendant promised"; instead, bailee for mutual benefit is liable for ordinary negligence).  Concomitantly, after finding a bailment for mutual benefit exists in this case, we must determine whether Hadfield is entitled to damages, relying on the application of tort principles rather than contract principles.

## III.  BAILEE'S DEGREE OF CARE/BURDEN OF PROOF

The degree of care required of a bailee for mutual benefit is defined as ordinary care, or due care, or the degree of care which would be exercised by a person of ordinary care in the protection of his own property.  *See Harris v. Burnside*, 261 S.C. 190, 199 S.E.2d 65 (1973)(bailment contract imposes upon bailee duty of care, breach of which constitutes a tort); *Shoreland Freezers, Inc. v. Textile Ice & Fuel Co.*, 241 S.C. 537, 129 S.E.2d 424 (1963)(finding when food processor delivered goods to warehouse for storage, relationship of bailor and bailee arose for their mutual benefit and, although warehouse owner was not insurer of property left in its custody, it was required to exercise ordinary care, or degree of care which would be exercised by person of ordinary care and prudence in protection of his own property).

In a bailment action alleging a breach of the duty of care, the bailor is entitled to be compensated for all losses that are the natural consequence and proximate result of the bailee's negligence. *Dixon v. Besco Eng'g, Inc.*, 320 S.C. 174, 463 S.E.2d 636 (Ct.App.1995). "Damages are proximately caused if they are the foreseeable result of the defendant's tortious act." *Id.* at 180, 463 S.E.2d at 639 (citing *Young v. Tide Craft, Inc.*, 270 S.C. 453, 242 S.E.2d 671 (1978)). Proximate cause is a question for the finder of fact. *Id.; Parr v. Gaines*, 309 S.C. 477, 424 S.E.2d 515 (Ct.App.1992). *See also Childers v. Gas Lines, Inc.*, 248 S.C. 316, 149 S.E.2d 761 (1966)(questions of proximate cause are normally within province of jury); *Vinson v. Hartley*, 324 S.C. 389, 477 S.E.2d 715 (Ct.App.1996) (ordinarily, question of proximate cause is one of fact for jury and trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence). The Supreme Court, in *Shoreland Freezers, supra,* discussed a bailee's liability under a bailment for mutual benefit:

Under the decided cases in this State, liability of a bailee under a bailment for mutual benefit arises upon a showing that (1) the goods were delivered to the bailee in good condition, (2) they were lost or returned in a damaged condition, and (3) the loss or damage to the goods was due to the failure of the bailee to exercise ordinary care in the safekeeping of the property. The burden of proof in such cases, in the first instance, rests upon the bailor to make out a prima facie case. This has been done when the bailor proves that he delivered the goods to the bailee in good condition and their loss or return in a damaged condition. When the bailor has so proven, the burden is then shifted to the bailee to show that he has used ordinary care in the storage and safekeeping of the property. *Fleischman, Morris & Co. v. Southern Railway*, 76 S.C. 237, 56 S.E. 974, 9 L.R.A.,N.S., 519; *Marlow v. Conway Iron Works*, 130 S.C. 256, 125 S.E. 569; *Gilland v. Peter's Dry Cleaning Co., supra,* 195 S.C. 417, 11 S.E.2d 857; *Albergotti v. Dixie Produce Co., Inc.*, 202 S.C. 357, 25 S.E.2d 156; *Kelley v. Capital Motors, Inc., supra,* 204 S.C. 304, 28 S.E.2d 836;

*Arkwright Mills v. Clearwater Mfg. Co.*, 217 S.C. 530, 61 S.E.2d 165.

*Shoreland Freezers*, 241 S.C. at 540–41, 129 S.E.2d at 425–26.

■ The burden of proof in this case rests first upon the bailor, Hadfield, to prove a *prima facie* case. He must show: 1) the goods were delivered to the bailee in good condition; and 2) they were lost or returned in a damaged condition. *See Fortner v. Carnes*, 258 S.C. 455, 189 S.E.2d 24 (1972)(burden is upon bailee to prove due or ordinary care on his part, to jury's satisfaction, if he is to relieve himself of liability for goods not returned in accordance with bailment contract; whether bailee has exercised due care with regard to stored goods has to be determined with reference to all circumstances of particular case); *Shoreland Freezers, Inc. v. Textile Ice & Fuel Co.*, 241 S.C. 537, 129 S.E.2d 424 (1963). When the bailor, Hadfield, has so proven, the burden is then shifted to the bailee, Gilchrist, to show that he has used ordinary care in the good's storage and safekeeping. *See Shoreland, supra; Marlow v. Conway Iron Works*, 130 S.C. 256, 125 S.E. 569 (1924).

As the Court explained in *Arkwright Mills v. Clearwater Mfg. Co.*, 217 S.C. 530, 61 S.E.2d 165 (1950):

In one of our most recent cases on this subject, the rule as to what constitutes a prima facie case is thus stated: "From a study of the decided cases in this State, it would appear that our Court has recognized that certain presumptions may arise in bailment cases, especially as to warehousemen, which overlap and shadow the oft repeated statement found in negligence cases, that the doctrine of res ipsa loquitur does not prevail in this State. In other words, in warehouse bailments, when the bailor shows that the bailee has not returned the property, the subject of the bailment, or that the property has been lost by theft or fire, or that it has been returned in a damaged condition, such bailor has made out a prima facie case, and the duty is then shifted to the bailee to show that he has used ordinary care in the storage and safekeeping of the property. From these facts, coupled with any testimony on the subject the bailor may introduce, it is for the jury to say whether the bailee has been negligent, that is failed to use ordinary care. Of

course if upon all the testimony in the case the only reasonable inference that can be drawn there from is that the bailee used due care, it would then be the duty of the trial Judge to direct a verdict in the bailee's favor." *Albergotti v. Dixie Produce Co.*, 202 S.C. 357, 25 S.E.2d 156, 158. The case of *Fleischman, Morris & Co. v. Southern Railway Co.*, 76 S.C. 237, 56 S.E. 974, 9 L.R.A.,N.S., 519, announces the same doctrine.

*Arkwright Mills*, 217 S.C. at 536–37, 61 S.E.2d at 167.

Hadfield testified before the magistrate regarding the "nice" condition of the vehicle prior to being towed, and the damage to his vehicle, and the other vehicles on the lot. In addition, he introduced photographs depicting the damage. Thus, Hadfield made out his *prima facie* case as required under *Fortner v. Carnes*, 258 S.C. 455, 189 S.E.2d 24 (1972). The burden then shifted to Gilchrist to show that he used ordinary care in protecting the vehicle while in his care.

Gilchrist impounded the cars in a storage lot surrounded by a chain link fence. There was an individual on the clock at all times. The person on duty spent time in the office and only visited the storage lot to check on it. The vandal cut a hole in the fence and broke into six to eight cars on the night in question. The fact the guard was not on duty at the impound lot and, considering the only other security for the vehicles was the chain link fence, the magistrate and Circuit Court judge could have concluded Gilchrist failed to exercise ordinary care. As explicated above, the decision of whether or not Gilchrist used ordinary care is a question of fact. Based on our standard of review, we must affirm the decision of the Circuit Court on the facts if it is supported by any evidence, and this Court finds no error of law. *See Wright v. Ritz Theatre Co.*, 211 S.C. 161, 44 S.E.2d 308 (1947); *Dingle v. Northwestern R.R.*, 112 S.C. 390, 99 S.E. 828 (1919). We find the facts support the finding that Gilchrist breached his duty as a bailee to Hadfield, and the Circuit Court was not controlled by any error of law.

## IV. DAMAGES

Gilchrist asserts the magistrate and the Circuit Court judge erred in the finding of damages. Yet, Gilchrist's own counsel stated: "And all they have proved is damages.

There's no question that the plaintiffs were damaged...." Hadfield proffered the testimony of Rodney Smitz, an assistant manager at Rick Hendrick Collision Center, to explain the damages and the cost to repair the vehicle. Gilchrist's counsel did not cross examine Smitz regarding the estimates. We find no merit in Gilchrist's argument that there was no evidence for the Circuit Court to calculate damages.

## CONCLUSION

We rule that where a city ordinance is utilized as the legal justification for taking possession of a vehicle on private property the person or entity lawfully acquiring possession of the property under the ordinance becomes a *constructive bailee* as a matter of law. We find a constructive bailment, for the mutual benefit of Hadfield and Gilchrist, was created. Further, we hold an action for breach of the duty of care by a bailor, although contractual in nature, sounds in tort. We conclude the burden of proof in a constructive bailment case rests first upon a bailor to prove a *prima facie* case and, once so proven, the burden shifts to the bailee to show the use of ordinary care in the storage and safekeeping of the property. Accordingly, the order of the Circuit Court is

**AFFIRMED.**

GOOLSBY and HUFF, JJ., concur.