17440

Betty CARROLL, Respondent, v. M. & J. FINANCE CORPORATION and BLUE RIDGE INSURANCE COMPANY, Appellants

(104 S. E. (2d) 171)

*Messrs. Hayes & Hayes* and *W. Clarkson McDow,* of Rock Hill, *for Appellant,*

*Charles B. Ridley, Esq.,* of Rock Hill, *for Respondent,*

*Messrs. Hayes & Hayes* and *W. Clarkson McDow,* of Rock Hill, *for Appellant,*

June 11, 1958.

OXNER, Justice.

The complaint in this case contained three causes of action but in view of the rulings of the Court below, we are not called upon to construe them. As to defendant Blue Ridge Insurance Company, the trial Judge held that it was liable to plaintiff on a policy insuring her against loss or damage to her automobile from collision or upset and instructed the jury to find its value at the time of the collision. The case was submitted to the jury against the defendant M & J Finance Corporation solely upon a cause of action for conversion. The jury found the value of the automobile at the time of the collision to be $1,957.63, and returned a verdict against the Finance Corporation for $1,500.00 actual damages and $2,500.00 punitive damages. The Court refused a motion by each defendant for judgment *non obstante veredicto* but granted a new trial as to the Finance Corporation unless plaintiff remitted on the record $300.00 of the verdict for actual damages, which was done. Both defendants appealed. The Insurance Company has abandoned its appeal. The only exception by the Finance Corporation which we need consider is that charging error in refusing to grant its motion for directed verdict upon the ground

that the evidence was insufficient to establish a cause of action for conversion.

On March 21, 1955, respondent purchased a new 1955 Ford from a used car dealer at Rock Hill. The unpaid portion of the purchase price was financed through appellant M & J Finance Corporation. She gave a mortgage on the Ford to this Corporation for $2,603.63, payable in monthly installments of $75.00 for a period of 23 months, with a 24th and final monthly installment of $878.63. The insurance on the car was written by the Blude Ridge Insurance Company. Its policy included comprehensive coverage and insurance against loss or damage from collision.

On April 24, 1955, the car was damaged by hailstorm. Several weeks later this loss was adjusted at the sum of $257.37 and on May 20, 1955, the Insurance Company issued a check for that amount payable to the Finance Corporation and Larry Jones Auto Body Shop. The Company contends that this was done because it was contemplated that the car would be repaired by the Larry Jones Auto Body Shop. Respondent denies that she ever authorized payment in this manner. The car was not repaired and a further controversy arose as to the application of the $257.37. Respondent was demanding that it be paid to her. While this last controversy was pending, on July 30, 1955 she let a boy friend have the car for the purpose of having it washed and later picking her up at the Celanese plant where she worked. He drove the care out into the country and wrecked it. After some investigation, the Insurance Company admitted liability and sought to settle this loss by paying respondent $778.50. She declined to settle on this basis.

During the latter part of August, 1955, the Larry Jones Auto Body Shop endorsed the check of $257.37, representing the loss by hailstorm, and turned it over to the Finance Corporation which applied it on the final monthly payment designated in the mortgage. This was done notwithstanding the fact that respondent's attorney had a day or two previ-

ously again insisted that the hail loss be paid directly to her. By this time she had made four monthly payments of $75.00 on her mortgage. She discontinued making further payments and after several demands, the Finance Corporation finally wrote her on October 3, 1955 that unless the August and September installments, aggregating $150.00, were promptly paid, the automobile would be sold under the mortgage. Thereafter on October 10, 1955, the Finance Corporation advertised the automobile for sale at public auction on October 26, 1955, at the Larry Jones Auto Body Shop in Rock Hill. A copy of this advertisement was mailed to respondent. Later the manager of the Finance Corporation, after consultation with his attorney, decided to apply the hail loss of $257.37 to the current account and called off the sale. On November 3, 1955, this action was commenced.

As heretofore stated, the verdict of the jury has determined the amount to be paid by the Insurance Company for the loss which occurred on July 30, 1955. It has abandoned its appeal and need not be further considered. The Finance Corporation conceded in oral argument that the payments under the mortgage were not in arrears when it advertised the car for sale but denied the charge of conversion. We now turn to the testimony relating to this issue, which is largely undisputed.

After the wreck of July 30th, respondent's automobile was removed at her direction to the Larry Jones Auto Body Shop. She testified in part: "Q. But M & J Finance didn't have anything to do with the car being taken to Larry Jones' garage. You had that done, did you not? A. Yes, sir, I had that done." She accompanied Jones when the car was taken to his body shop but never returned or gave any instructions as to what, if anything, was to be done to it. Jones testified that at the request of respondent, he towed the car to his shop, later placed it within a fence on the outside and covered it with a tarpaulin. He says that no one has ever given him any instructions as to what was to be done. There is no testimony that the Finance Corporation as-

sumed any actual control of the automobile. Its manager testified that as a result of applying the hail loss on the current account, respondent was not in default on her mortgage and for this reason on the day the car was to be sold, he went to the body shop "to retract the sale" but no one was there, and that no effort was ever made to sell the car.

Many definitions of conversion are to be found in the books. Difficulty has been encountered in undertaking to frame a comprehensive one. The following has been approved by this Court in several cases: "An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another or the alteration of their condition or the exclusion of an owner's rights." *Commercial Credit Co. v. Cook,* 165 S. C. 387, 164 S. E. 17, 19; *Neel v. Clark,* 193 S. C. 412, 8 S. E. (2d) 740. In *Harris v. Saunders,* reported as a note in 2 Strob. Eq. 370, the Court said: "A conversion may arise either by a wrongful taking of the chattel, or by some other illegal assumption of ownership, by illegally using, or by misusing it; or by a wrongful detention; perhaps more accurately defined by another writer thus; a conversion seems to consist in any tortious act, by which the defendant deprives the plaintiff of his goods, either wholly or but for a time. Any act of the defendant inconsistent with the plaintiff's right of possession, or subversive of his right of property, is a conversion."

It is stated by Professor Prosser in his work on Torts, Second Edition, Hornbook Series, page 77: "The gist of conversion is the interference with control of the property. It follows that a mere assertion of ownership, without any disturbance of possession, or any other interference with the right to it, is not sufficiently serious to be classed as conversion."

We conclude that the facts in the instant case, considered in the light of the foregoing principles, are insufficient to sustain a cause of action for conversion. It is not shown that respondent's possession of the automobile was ever disturbed. It remained at the body shop where she left it and so far as the record discloses, she was free to remove it at

any time she saw fit. There is no testimony that the Finance Corporation ever exercised any dominion or control over the automobile. It is true that it wrongfully advertised the car for sale but this without more is insufficient to constitute a conversion. There is some suggestion in respondent's brief that the jury could have concluded that the car was sold but the uncontradicted evidence is to the contrary.

In *Brandenburg v. Northwestern Jobbers' Credit Bureau,* 128 Minn. 411, 151 N. W. 134, L. R. A. 1915D, 474, it was held that the mere unauthorized advertising of another's property for sale is not such an assertion of authority over it or negation of the owner's rights as to amount to a conversion. In this case there was a mistaken advertisement of certain property for sale which was not followed by any sale or by any exercise of dominion or ownership. In *Kunze v. Cox,* 113 Mich. 546, 71 N. W. 864, 67 Am. St. Rep. 480, it was held that the fact alone that property was levied upon and advertised for sale is not sufficient to establish a conversion. In *Richstein v. Roesch,* 71 S. D. 451, 25 N. W. (2d) 558, 560, 169 A. L. R. 98, it was held that the mere assertion of an unfounded lien on property does not constitute a conversion. The Court there said: "We are satisfied that while manual possession of the property is not necessary to constitute conversion something more than the mere claim or filing of a mechanic's lien is necessary. There is no conversion where there is no denial or violation of plaintiff's dominion over or rights in the property." Also, see Annotation 38 A. L. R., page 1096. Some of the authorities go further than it is necessary for us to go in the instant case. For instance, it has been held that the *sale* of a chattel by one who has no right to it, while the owner's possession remains undisturbed, does not make the defendant a converter. *Traylor v. Horrall,* 4 Blackf., Ind., 317.

We think the Court erred in refusing the motion of the M & J Finance Corporation for a directed verdict. Accordingly, the judgment as to this defendant is reversed and the case remanded for entry of judgment under Rule 27.

STUKES, C .J., and TAYLOR, LEGGE and MOSS, JJ., concur.