**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Rene S. Wells and Wilson Shealy, Jr. as Co-Personal Representatives of Wilson Shealy, Sr., Respondent,

v.

David Shealy, Appellant,

AND

David Shealy, Appellant,

v.

Renee Shealy Wells, Wilson Shealy, Jr., and Mimi Shealy, Respondents.

Appellate Case No. 2022-001602

———————

Appeal From Lexington County
Walton J. McLeod, IV, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-008
Submitted October 1, 2025 – Filed January 14, 2026

———————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————

Tobias Gavin Ward, Jr., and James Derrick Jackson, both of Tobias G. Ward, Jr., PA, of Columbia, for Appellant.

Richard R. Gleissner, of Gleissner Law Firm, LLC, of Columbia, for Respondent Wilson Shealy, Sr.; Eric Steven Bland, of Bland Richter, LLP, of Lexington, for Respondents Renee Shealy Wells, Wilson Shealy, Jr., and Mimi Shealy.

---

**PER CURIAM:** David Shealy and his siblings (Siblings) are the adult offspring of Wilson Shealy, Sr. (Father). Father lived on a tract of rural land (the family property) leased from Dominion Energy. David lived there sometimes as well. Over the years, the family property became a repository for lots of items—large and small—including airplanes, vehicles, tools, heavy equipment, and parts.

A dispute arose over these items and has continued after Father's death. Father's death led to much of the disputed personal property being sold so the land would be cleared before it was returned to Dominion. The circuit court granted summary judgment in favor of Father's estate and Siblings on claims David asserted against them. This appeal followed.

We agree that the estate was entitled to summary judgment because David's claims are barred by the Probate Code. But as to Siblings, David's conversion and civil conspiracy claims are genuine disputes with conflicting evidence. We therefore affirm the summary judgment in the estate's favor and reverse the summary judgment for Siblings on David's claims for conversion and conspiracy.

## CLAIMS AGAINST FATHER'S ESTATE

The Probate Code establishes the framework for presenting claims against a decedent's estate. *See* S.C. Code Ann. § 62-3-804 (2022). The key statute (section 62-3-803) is a "nonclaim statute" because it bars a claim unless its terms are followed. *In re Estate of Tollison*, 320 S.C. 132, 135, 463 S.E.2d 611, 613 (Ct. App. 1995); *see also In re Estate of Hover*, 407 S.C. 194, 206, 754 S.E.2d 875, 881–82 (2014) ("A statute is a nonclaim statute if there is a clearly evidenced legislative intent in the statute to not merely withhold the remedy, but to take away the right of recovery when a claimant fails to present his or her claim as provided in the statute." (quoting 51 Am. Jur. 2d *Limitation of Actions* § 3 (2011))). In relevant part, the

statute provides that all claims against an estate are barred unless they are "presented" within one year of the decedent's death. S.C. Code Ann. § 62-3-803(a)(1) (2022). However, the Probate Code contains an exception providing "no presentation of a claim is required in regard to matters claimed in proceedings against the decedent which were pending at the time of the decedent's death." § 62-3-804(4).

David argues his claims were "pending" because they had been initiated before Father's death and had not reached a final adjudication. Our precedent forecloses this argument. Before Father died, the parties agreed to strike this lawsuit under Rule 40(j), SCRCP. This court has interpreted the striking of a case under Rule 40(j) as the functional equivalent of a dismissal. *See Goodwin v. Landquest Development, LLC*, 414 S.C. 623, 630–31, 779 S.E.2d 826, 830–31 (Ct. App. 2015). We do not see how a case could be simultaneously "dismissed" and "pending."

*Goodwin* analyzed the notes to Rule 40(j) and recognized the rule's purpose was to "substantially revis[e] the procedure for *dismissing* a case previously found in Rule 40(c)(3)." *Id.* at 631, 779 S.E.2d at 830 (quoting Rule 40, SCRCP (notes to 1994 amendments)). The court noted that the rule's tolling provision "would not be necessary if striking the case pursuant to Rule 40(j) were not the equivalent of a dismissal." *Id.* at 631, 779 S.E.2d at 831. As a result, the court determined there was "basis in our law" for considering a stricken case as dismissed. *Id.* at 630–31, 779 S.E.2d at 830; *see also id.* at 631–32, 779 S.E.2d at 831 (further explaining the historical basis for considering a case stricken under Rule 40(j) as effectively dismissed). Thus, David's claims were not pending when Father died. The case had been stricken under Rule 40(j) and was not restored until after Father's death.

David next asserts the nonclaim statute does not apply because his claims are not "claims" within the Probate Code's meaning.

A probate "claim" encompasses "debts or demands as existed against the decedent in his or her lifetime and that might have been enforced against him or her by personal actions for the recovery of money." *Hover*, 407 S.C. at 203, 754 S.E.2d at 880 (quoting 34 C.J.S. *Executors & Administrators* § 548 (Supp. 2013)). "Stated another way, the term includes every species of liability that the personal representative can be called on to pay out of the general funds of the estate." *Id.* at 203, 754 S.E.2d at 880 (quoting 34 C.J.S. *Executors & Administrators* § 548 (Supp. 2013)). However, "claim" excludes "disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate." S.C. Code Ann. § 62-1-201(4) (2022).

David argues that his claims are disputes about who owns the items in question. We do not discount that ownership is an element of conversion, but David's original and amended pleadings did not seek a declaration of title. Instead, he has consistently sought money damages against the estate. *See Hover*, 407 S.C. at 203, 754 S.E.2d at 880 (finding "personal actions for the recovery of money" qualify as claims (quoting 34 C.J.S. *Executors & Administrators* § 548 (Supp. 2013))). Thus, though ownership is involved, we do not see David's claims as "title" disputes. They are tort claims seeking damages from the estate.

For these reasons, the circuit court correctly concluded David's claims against the estate were barred by the nonclaim statute.

## CLAIMS AGAINST SIBLINGS

The nonclaim statute has no bearing on David's claims against Siblings. David asserted these claims against Siblings in their individual capacities, not as representatives of the estate.

David contends the circuit court misapplied the summary judgment standard by failing to view the evidence in a light most favorable to him as the nonmovant. We agree that the record reflects genuine issues of material facts on David's conversion and civil conspiracy claims. We disagree with respect to David's negligence claim because we see no legal duty supporting a viable negligence claim.

### Conversion

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Crane v. Citicorp Nat'l Serv., Inc.*, 313 S.C. 70, 73, 437 S.E.2d 50, 52 (1993), *superseded by statute on other grounds*. "Conversion may arise by some illegal use or misuse, or by illegal detention of another's personal property." *Moore v. Weinberg*, 373 S.C. 209, 227, 644 S.E.2d 740, 749 (Ct. App. 2007) (quoting *Regions Bank v. Schmauch*, 354 S.C. 648, 667, 582 S.E.2d 432, 442 (Ct. App. 2003)), *aff'd*, 383 S.C. 583, 681 S.E.2d 875 (2009). "It follows that a mere assertion of ownership, without any disturbance of possession, or any other interference with the right to it, is not sufficiently serious" to qualify as a conversion. *Carroll v. M. & J. Fin. Corp.*, 233 S.C. 200, 204, 104 S.E.2d 171, 173 (1958) (citation omitted).

David claims Siblings assisted the estate in selling the items that belonged to him and were stored on the family property. David submitted an affidavit and an itemized list identifying the things he says were his. His submission included titles to several vehicles. He also described multiple firearms by model, caliber, distinguishing features, and even a serial number in one instance.

Although Siblings contest David's ownership claims, Father's original complaint affirmatively stated that David owned some of the items stored on the family property. Viewing the record in a light most favorable to David, the conflicting pleadings, exhibits, and David's description of claimed property demonstrates a genuine dispute as to who owned the disputed items.

It is equally well settled that conversion occurs when one wrongfully interferes with the rightful owners' ability to possess property. *See Moore*, 373 S.C. at 227, 644 S.E.2d at 749 ("Conversion may arise by some illegal use or misuse, or by illegal detention of another's property." (quoting *Regions Bank*, 354 S.C. at 667, 582 S.E.2d at 442)); *see also* 90 C.J.S. *Trover and Conversion* § 34 (2025 update) ("A sale of the personal property of another is an actionable conversion where it is wrongful or unauthorized by law or without the consent of the owner and is in defiance of the owner's rights.").

The record presents colorable questions regarding substantial interference. Siblings admitted they already sold "eighty or so cars." David submitted receipts for sales of vehicles and other items he claimed. He also produced evidence of an auction Siblings admit to organizing. Siblings also stated they did not want David on the property during the auction.

Put simply, it is virtually undisputed that Siblings have sold a significant portion of the disputed property. The only dispute appears to be whether any of the sold items belonged to David. Therefore, we find summary judgment was inappropriate. *See Hill v. York Cnty. Sheriff's Dep't*, 313 S.C. 303, 305, 437 S.E.2d 179, 180 (Ct. App. 1993) ("[E]ven whe[n] there is no dispute as to the evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should not be granted.").

Accordingly, we find the record and competing affidavits present a classic case of conflicting evidence and therefore raise a genuine dispute of fact. *See Carroll*, 233 S.C. at 204, 104 S.E.2d at 173 (requiring the plaintiff to assert ownership and disturbance of possession to maintain a conversion action); *see also Abdelgheny v. Moody*, 432 S.C 346, 349–50, 852 S.E.2d 225, 227 (Ct. App. 2020) (noting a court

reviewing a motion for summary judgment is required "to presume the credibility of the evidence"); *John Deere Constr. & Forestry Co. v. N. Edisto Logging, Inc.*, 443 S.C. 424, 435, 904 S.E.2d 889, 895 (Ct. App. 2024), *cert. denied* (February 12, 2025) (noting the court neither "considers the merits of competing testimony" nor does it "weigh conflicting evidence with respect to a disputed material fact" when ruling on summary judgment (citations omitted)).

**Civil Conspiracy**

"Civil conspiracy is an act [that] is, by its very nature, covert and clandestine and usually not susceptible of proof by direct evidence." *First Union Nat. Bank of S.C. v. Soden*, 333 S.C. 554, 575, 511 S.E.2d 372, 383 (Ct. App. 1998). "In order to establish a conspiracy, evidence, either direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of an unlawful enterprise." *Id.* The gravamen of a civil conspiracy is not the agreement itself, it is the damage stemming from the alleged concerted action. *See* 16 Am. Jur. 2d *Conspiracy* § 53 (2025 update) ("The elements of civil conspiracy are quite similar to those required of a criminal conspiracy, with the distinguishing factor being that an agreement is the essence of a criminal conspiracy, while damages are the essence of a civil conspiracy."); *id.* at § 55 ("The gist of a civil conspiracy is not the unlawful agreement or combination but the damage caused by the acts committed in pursuance of the formed conspiracy.").

Civil conspiracy "may be inferred from the nature of the acts committed, the relationship of the parties, the interests of the alleged conspirators, and other relevant circumstances." *Moore*, 373 S.C. at 228, 644 S.E.2d at 750. The record here supplies more than a speculative basis for such inference. Two of the siblings are the co-personal representatives of Father's estate; they are jointly obligated to remove all personal property from the family property; and they organized an auction to sell a significant amount of personal property. It is possible to view some of the evidence as showing hostility toward David—we make no such finding; our concern is only whether some evidence would support it and whether such a showing presents a genuine issue of material fact pertinent to the challenged cause of action. Given that there is some evidence of animus toward David and the aligned interests of these individuals, we find the circumstances, taken collectively, support a reasonable inference that Siblings acted in concert.

There is no question that the wrongful appropriation of another's property constitutes an unlawful act. Therefore, when viewed in the proper light, the record raises a legitimate question whether David suffered damages from the alleged concerted

action.  *See Paradis v. Charleston Cnty. School District*, 433 S.C. 562, 574, 861 S.E.2d 774, 780 (2021) (overruling all cases requiring parties to plead special damages in civil conspiracy cases, including those imposing an obligation to plead damages independent from other claims alleged in the complaint).

**Negligence**

To prevail on a negligence claim, a plaintiff must establish: (1) the defendant owed a duty of care to the plaintiff; (2) "breach of that duty by a negligent act or omission"; (3) the breach resulted in damages to the plaintiff; and (4) the plaintiff's damages "proximately resulted from the breach of duty." *Thomasko v. Poole*, 349 S.C. 7, 11, 561 S.E.2d 597, 599 (2002).

David argues that a constructive bailment arose when Siblings assumed control of the disputed personal property, creating a duty of care.  We respectfully disagree.

"A bailment relationship can be implied by law whenever the personal property of one person is acquired by another and held under circumstances in which principles of justice require the recipient to keep the property safely and return it to the owner." 8A Am. Jur. 2d *Bailments* § 1 (2025 update).  A constructive bailment may be implied by law when "one person has lawfully acquired possession of another's personal property, other than by virtue of a bailment contract, and holds it under such circumstances that the law imposes on the recipient of the property the obligation to keep it safely and redeliver it to the owner." *Hadfield v. Gilchrist*, 343 S.C. 88, 96, 538 S.E.2d 268, 272 (Ct. App. 2000).  "[N]o bailment can be implied where it appears it was the intention of the parties, as derived from their relationship to each other and from the circumstances of the case, that the property was to be held by the party in possession in some capacity other than as bailee." 8A Am. Jur. 2d *Bailments* § 1.

A key feature of an implied bailment is the trust stemming from the undisputed nature of ownership coupled with the mutual understanding that the property would be returned to the bailor.  *See Hadfield*, 343 S.C. at 97, 538 S.E.2d at 273 (finding a constructive bailment was created when a towing company took possession of the plaintiff's car pursuant to city ordinances); *see also Gilliand v. Peter's Dry Cleaning Co.*, 195 S.C. 417, 11 S.E.2d 857 (1940) (finding a constructive bailment existed when the plaintiff delivered a coat to the dry cleaner for its services).  The record before us does not support the trust-based relationship necessary to imply a bailment. David alleges Siblings engineered a conflict between Father and David that resulted in David being forced off the family property.  Siblings themselves acknowledge a

deeply strained relationship with David. Against this underlying hostility and acrimonious ownership dispute, it is difficult to conclude David placed any trust, explicit or implicit, in Siblings to safeguard or return his property, or that Siblings' possession of the property bore the hallmarks of a bailment.

David next argues a contractual duty arose from an agreement between Siblings and Dominion. But David's amended answer and third-party complaint were filed in February 2020, and the Dominion agreement was not executed until February 2022. David cites no authority, and we are aware of none, that would permit a contract executed two years after the allegedly negligent conduct to retroactively create a duty of care. We respectfully reject this argument because the alleged contractual duty did not exist at the time of the alleged breach.

Last, and to the same general point, we fear imposing a tort duty on this basis would all but erase the distinction between contract and tort actions, especially when David is not a party to the Dominion agreement. If this agreement created a duty to David, every breach of a contractual duty could arguably be recast as a negligence action. *See Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 54–55, 463 S.E.2d 85, 88 (1995) ("A breach of a duty [that] arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.").

Because David cannot establish that Siblings owed him a duty of care, we affirm the circuit court's decision to grant summary judgment on this claim. *See Carolina All. For Fair Emp. v. S.C. Dep't of Lab., Licensing & Regul.*, 337 S.C. 476, 485, 523 S.E.2d 795, 800 (Ct. App. 1999) ("A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.").

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[1]

**MCDONALD, HEWITT, and TURNER, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.